INTERNATIONAL FLATSTUB CHECK BOOK CO., Incorporated, v. YOUNG & SELDEN CO. OF BALTIMORE CITY.

(District Court, D. Maryland. March 14, 1922.)

No. 249.

1. Patents ⟊236—Infringement not avoided by putting hinge of check book at top, instead of left side, unless left side hinge is element of patent.

Infringement of a patent for a check book with flat-lying stubs cannot be evaded by placing a flexible web hinge at the top, instead of the left side, unless the claim of the patent is so worded as to make the left-hand opening an element of the thing patented.

2. Patents ⟊328—1,307,708, for check book, held anticipated.

The Smith patent, No. 1,307,708, for a check book with flat-lying stubs, held not limited to one in which the flexible web hinge is at the left side, but held anticipated.

3. Patents ⟊112(3)—Presumption of novelty lessened when anticipating patent not cited.

The presumption of novelty arising from favorable action of the Patent Office is lessened when a patent relied on as an anticipation was not cited against it by the examiner and apparently escaped his attention.

⟊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the International Flatstub Check Book Company, Incorporated, against the Young & Selden Company of Baltimore City. Bill dismissed.

John Watson, Jr., of Baltimore, Md., and Pollard & Smith, of Richmond, Va., for complainant.

Stewart & Pearre, Edwin F. Samuels, and John E. Cross, all of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff is the owner of letters patent, No. 1,307,708, issued on June 24, 1919, upon the application of one Henry Smith. In the more common forms of check books heretofore in use, when opened, the stubs are more or less bowed, and are not altogether easy to write upon, and for that reason are poorly adapted for the record of elaborate memoranda. Flat-lying stubs would be more convenient, and some attempt to devise books which should have them had been made before the patent in suit was applied for. For some reason or other, none of them seem to have commanded much popular favor. The Smith book, because it was better designed, accomplished its purpose more completely, was generally more satisfactory, or for some other reason went at once into extensive use. In a very short time after it came upon the market, a number of the largest manufacturing stationers in the country took license under it.

In the year 1921 the patented check books made by these licensees contained an aggregate of over 63,000,000 checks. The public paid some $270,000 for them, and plaintiff's royalty, at 10 per cent. upon the selling price, brought it in about $27,000. The defendant readily appreciated the merits or the salability of the new book, and sought to obtain a license to make and sell it in Baltimore and its vicinity. A local competitor had, however, been still more prompt, and in consequence defendant's application was perforce declined. Then, in a short space, the book said to infringe made its appearance.

[1, 2] In the plaintiff's device, the essential feature is a flexible web hinge, which so unites the book with the cover that the latter can be thrown back without in any wise effecting the position of stubs or checks; they remaining as flat as they were when the book is closed. It is admitted that the only real difference between the book of the plaintiff and that of the defendant is that, while in the former the hinge connecting back and cover is at the left hand of stubs and checks, in the defendant's it is at the top. Books which open away from the reader, as well as those which open towards his left hand, have been well known for decades, if not for centuries. The defendant cannot escape infringement by so obvious an evasion, unless the claim of the patent in controversy is so worded as to make the left-hand opening an element of the thing patented. All that the claim says on that subject is that the web shall be secured to the respective ends of the back and the cover—

"to form a hinge, whereby the cover may be folded over upon the pad, and may be swung free of the stubs, to allow the stubs to be folded upwardly for easy inspection."

There is in this nothing to require that the web hinge shall be secured to the left rather than to the top edge of a back, or to the right rather than to the lower edge of the cover. Unquestionably the drawing shows a book in which the hinge is attached to the left end of the back, and therefore necessarily to the right end of the cover, and certain desirable incidental results from so doing are pointed out in the specifications, in which it is said:

"That the filled-in stubs will not interfere with the filling in of the successive stub as the checks are used, the cover being swung open conveniently toward the left out of the way, thus enabling the stubs to be swung upwardly. This provides a convenient and practical arrangement. Should it be desired to keep the place marked where the stubs are being filled in, the cover can be swung over the sheets with the used stubs turned up, thereby holding the turned-up stubs in place, and covering the checks and stubs which are being used, or which are to be filled in. It is therefore advantageous to hinge the cover to that end of the back adjacent which the stubs are located; the stubs swinging upwardly while the cover swings open to the left."

The last sentence quoted tells the whole story. It is advantageous to hinge the cover to the left edge of the back, and that is patentee's preferred form, as it doubtless would be the defendant's, if defendant were free to use it. But, after all, it is only the preferred form, and there is nothing in either the specifications or the claim which limits the patentee to such a detail of construction.

The question, therefore, is not of infringement, but of validity; for, if it be conceded that the prior art precluded the patentee from a claim which would permit a web hinge to be fastened to the top of the back, the conclusion would be almost inevitable that the patentee had invented nothing, for it is scarcely conceivable that invention could have been found in putting a hinge on one end rather than on another. The patentee was not the first to use a web hinge. There had been flat stub check books before his day. One Powers had, a score of years ago, patented a book in which the cover was attached to the back at the top, and there was firmly united to the stubs, but so arranged as to swing free of the checks. The construction was a trifle awkward, and looks as if it would have proven rather insecure in actual use, if anybody had actually used it, as perhaps no one ever did.

A still closer anticipation is shown by the patent to Lowenbach, No. 519,769, May 15, 1894. The only discoverable difference between the book there described and that of the patent in suit is that in the former the pad of checks and stubs was fastened to a tongue, which, in its turn, was inserted in a pocket in the back. In that way, when one pad was used up, another could be put into its place and the binding be made to serve indefinitely. That arrangement may or may not be desirable, but certainly there would be no invention in replacing it, as the patent in suit does, by attaching the pad to the back in a way which had been in common use from time immemorial.

[3] An examination of the file wrapper of the Smith patent shows that the one to Lowenbach was not cited against it by the examiner, and doubtless in some way escaped his attention, thereby lessening the

weight of the presumption of novelty arising from the favorable action of the Patent Office.

It follows that the patent in suit must be held invalid, and the bill dismissed.